CRYSTAL ICE AND MANUFACTURING COMPANY v. STATE OF TEXAS.

Decided March 21, 1900.

**Corporations—Combination in Restraint of Trade—Forfeiture of Charter.**
   Appellant corporation was chartered to manufacture ice and supply it to the
people of San Antonio, and this it did for several years, when another company,
the officers of which were also officers of appellant corporation and other ice com-
panies of San Antonio, was chartered for a similar purpose, but, without erecting
any plant, made a contract with appellant and the other ice companies in that city
to buy the ice manufactured by them, and purchased their wagons, and all the
other companies thereafter refused to sell ice to any one but this latter company,
which supplied the public at a fixed price. Held, that such facts showed a combina-
tion in restraint of trade and violative of the anti-trust statute such as war-
ranted a judgment dissolving appellant's corporate existence and appointing a re-
ceiver to wind up its affairs.

APPEAL from Bexar.   Tried below before Hon. R. B. GREEN.

*Ogden & Terrell,* for appellant.

*T. S. Smith,* Attorney-General, and *Carlos Bee,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This is a proceeding by quo warranto
brought in the name of the State of Texas by the Attorney-General
against the appellant to forfeit its charter and rights thereunder, to dis-
solve its corporate existence, and to appoint a receiver for the purpose
of winding up its affairs.   The petition alleges in substance that the
Crystal Ice and Manufacturing Company, the Southern Ice and Cold
Storage Company, the Butchers and Saloon Men's Ice Manufacturing
Association, and the San Antonio Ice Company, are all corporations in-
corporated under the laws of this State for the purpose of manufactur-
ing and selling artifical ice, each having its office and place of business
in the city of San Antonio, Bexar County, Texas; that each of the first
three corporations named owns its plant, and was engaged in the manu-
facture of artificial ice, which, prior to the 2d day of January, 1899, it
sold at retail and delivered to the citizens of San Antonio; that the
San Antonio Ice Company, though it has its principal office and place
of business in the city of San Antonio, and was incorporated and organ-
ized for the purpose of manufacturing and selling artificial ice to the in-
habitants of said city, did not at any time, nor does it now, own, operate,
or control any artificial ice manufacturing plant of any kind or de-
scription; that said company was and is now engaged in selling and de-
livering by retail ice to the inhabitants of said city in compliance with a
contract and agreement made with the three other corporations whose
names are first mentioned; that prior to the time of said agreement, the
date of which is hereinafter stated, the three corporations first named
were the only parties, either corporate or individual, engaged in the man-
ufacture and sale and delivery of ice to the inhabitants of San Antonio
and of Bexar County; that there was not, prior to such agreement, any

competition except among said three corporations in the manufacturing, production, and vending of ice for the benefit of the inhabitants of said city and county.

That on about the 2d day of January, 1899, the Crystal Ice and Manufacturing Company, for the purpose of carrying out restrictions in trade, restrictions in the full and free pursuit of its business of manufacturing, producing and vending ice, to prevent competition in the manufacture and sale of said commodity, for the purpose of fixing a common standard or figure whereby the price of such merchandise intended for sale and consumption in said city should be controlled, and for the purpose of establishing and settling the price of said commodity between themselves, and to preclude free and unrestricted competition among themselves and others in the sale of said product, and for the purpose of pooling, combining, and uniting the interests which they each had in connection with the sale of said merchandise, to the end that the price thereof might be fixed and controlled among themselves, did unlawfully and fraudulently agree and conspire with the San Antonio Ice Company, Southern Ice and Cold Storage Company, and Butchers and Saloon Men's Ice Manufacturing Association in the manner following, that is to say: It was agreed by and between the defendant, the Crystal Ice and Manufacturing Company, and the said San Antonio Ice Company, that the said Crystal Ice and Manufacturing Company would sell and deliver to the said San Antonio Ice Company the entire output of artificial ice manufactured during the year beginning January 31, 1899, and ending December 31, 1899, at the price of 27½ cents per hundred pounds; and that the said Crystal Ice and Manufacturing Company would not, during the said year aforesaid, sell or deliver any artificial ice so manufactured to the inhabitants of the city of San Antonio and Bexar County, except with the consent and permission of the San Antonio Ice Company; and at the same time the Butchers and Saloon Men's Ice Manufacturing Association aforesaid made and entered into a contract with the said San Antonio Ice Company by which, for a period of five years, beginning on January 1, 1899, it bound and obligated itself to sell and deliver to the said San Antonio Ice Company its entire output and manufacture of artificial ice at a fixed rate of 25 cents per hundred pounds, and further obligated and bound itself not to sell and deliver ice to the inhabitants of the city of San Antonio and of Bexar County, during the said period of five years beginning as aforesaid, except with the consent and permission of the said San Antonio Ice Company; and at the same time the Southern Ice and Cold Storage Company made and entered into a similar agreement, contract, and obligation with the said San Antonio Ice Company aforesaid, as to its entire output and manufacture of artificial ice during the year beginning January 1, 1899, and ending December 31, 1899, at the fixed rate of 27½ cents per hundred pounds, and that the said Southern Ice and Cold Storage Company would not, during the period aforesaid, sell or deliver any artificial ice

to the inhabitants of the city of San Antonio and Bexar County, except with the consent and permission of the said San Antonio Ice Company.

That by reason of said agreement between the Crystal Ice and Manufacturing Company and the San Antonio Ice Company, and the agreement between the Southern Ice and Cold Storage Company, the Butchers and Saloon Men's Ice Manufacturing Association, and the San Antonio Ice Compay, the last named company is now the only company, corporation, or person engaged in the business of manufacturing, retailing, and vending ice to the inhabitants of the city of San Antonio, Bexar County, Texas; that by reason of said unlawful and fraudulent agreement between said companies, free and unrestricted competition among themselves and others in the manufacture, sale, and transportation of artificial ice in the city of San Antonio and Bexar County is precluded, and a common standard or figure for the sale of artificial ice to said inhabitants controlled and established.

That the Crystal Ice and Manufacturing Company is one of the methods by which artificial ice is manufactured for the use of the general public, and that a sudden interruption of its legitimate business would endanger the solvency thereof, and seriously inconvenience the public.

The petition closes with a prayer for the appointment of a receiver for all the defendant's corporate property and right, to be administered as the court may order; that defendant be required to deliver and surrender its corporate property and rights to such receiver, and for judgment forfeiting unto the State of Texas the charter and franchises of the corporation.

The Crystal Ice and Manufacturing Company, after filing general and special demurrers to the petition, answered, in substance, by denying that it had done any act for which its charter should be forfeited, and specially denying the allegations charging it with entering into any illegal agreement or combination having for its purpose the effect averred. It denied that it was engaged in the manufacture of ice for the use of the general public, but alleged that it was engaged in the purely private business of manufacturing ice for the benefit of its stockholders, and for the purpose of selling the same to any one who would buy and pay for it, and that the public is in nowise interested in its business, and that the sudden interruption of its legitimate business would not affect the public, nor in any maner endanger defendant's solvency.

Defendant's general and special exceptions were overruled by the court, and the case was tried before a jury, who returned a verdict in favor of plaintiff, upon which a judgment, such as is asked by the State, was entered.

*Conclusions of Fact.*—The Alamo Mills Company was chartered under the general laws of this State on the 29th day of December, 1886, with a capital stock of $180,000. Afterwards, on the 28th day of February, 1888, its charter was amended, and by the amendment its name was changed to the Crystal Ice and Manufacturing Company, the defendant

in this action. Among the purposes of the corporation, as is shown by its amended charter, "is the manufacture of ice by any and all kinds of chemical processes or otherwise, and the supplying of the same to the inhabitants of this and other States for their use." Its capital stock was to be $100,000, and its place of business designated to be in the city of San Antonio, Bexar County, Texas.

On the 10th day of December, 1890, the Southern Ice and Cold Storage Company was incorporated under the general laws of this State, with a capital stock of $75,000, and its place of business designated in the charter is the same as that of appellant. The purpose for which it was incorporated, as was stated in its charter, is the manufacture of ice, cold storage, refrigeration and preservation of fruits, vegetables, meats, and fish.

On the 15th day of May, 1895, the Butchers and Saloon Men's Ice and Manufacturing Association was also incorporated under the general laws of Texas with a capital stock of $40,000, and the principal office of the association fixed by the charter in the city of San Antonio. The purpose for which it was formed was supplying ice to the citizens of Bexar and surrounding counties, and furnishing cold storage for meats and other supplies.

On the 5th day of April, 1895, the San Antonio Ice Company was incorporated under the laws of Texas with a capital stock of $10,000, and San Antonio, Bexar County, Texas, designated as its place of business. The purpose for which it was formed is the manufacture and sale of ice in Bexar County, Texas.

Immediately after the three corporations first named were chartered, each constructed its own plant in the city of San Antonio for the manufacture of ice, and, when constructed, each engaged in the manufacture and sale of ice for and to the inhabitants of the city of San Antonio and Bexar County. For the sale and delivery of its product to the inhabitants of the city of San Antonio, each of the first two corporations up to the time of the incorporation of the San Antonio Ice Company, owned and had wagons and teams, employed drivers and servants, and competed with each other in the manufacture, sale, and delivery of ice to said inhabitants.

The San Antonio Ice Company, though one of the purposes of its creation was the manufacture of ice, never constructed a plant for that purpose, nor engaged in its manufacture. It simply maintained its organization and kept an office in the city of San Antonio for the purposes hereinafter stated. Its president is the vice-president of the Southern Ice and Cold Storage Company. Its secretary and treasurer is the superintendent and general manager of the Crystal Ice and Manufacturing Company.

Immediately after the organization of the San Antonio Ice Company, the Crystal Ice and Manufacturing Company and the Southern Ice and Cold Storage Company, for the purpose of carrying out restrictions in trade in the manufacture of ice, and to prevent competition in its manu-

facture and sale, and to fix a common price for said merchandise intended for sale and consumption in the city of San Antonio, and to prevent competition among themselves and others in the sale of such product, and for the purpose of combining and uniting their interests, agreed with the San Antonio Ice Company that they would sell and deliver to said company from year to year stipulated quantities of ice at prices agreed upon, and not to sell and deliver any more of their ice to the inhabitants of the city of San Antonio. Before said agreement said two companies were competing with each other in the sale and delivery of ice to the inhabitants of San Antonio. Afterwards each ceased said competition, failed and refused to deliver that product to said inhabitants, and each turned over their wagons and teams to the San Antonio Ice Company, who by means of said wagons, teams, and employes, sold and delivered to said inhabitants the ice manufactured by said two companies at uniform prices.

After the construction of its plant in 1895, the Butchers and Saloon Men's Ice and Manufacturing Association manufactured and retailed its ice to the inhabitants of the city of San Antonio and Bexar County and to the general public up to the year 1899, thus competing with the Crystal Ice and Manufacturing Company and the Southern Ice and Cold Storage Company, or the San Antonio Ice Company, the medium through which they sold and delivered their products, in the sale and delivery of ice to the inhabitants of the city of San Antonio until that time, when it was driven out of competition by means of the other two companies having turned over their products and patronage to the San Antonio Ice Company, and by its sale to the inhabitants of San Antonio in the manner afore stated.

In the early part of the year 1899, the Crystal Ice and Manufacturing Company agreed to deliver to the San Antonio Ice Company during that year 6500 tons of ice, and for the ice furnished during the months from April to September inclusive the San Antonio Ice Company agreed to pay it $5.50 per ton, and from October to March, inclusive, $3 per ton. About the same time the Southern Ice and Cold Storage Company agreed to deliver to the San Antonio Ice Company during that year 5000 tons of ice at $5.50 per ton. About the same time the Butchers and Saloon Men's Ice Manufacturing Association was authorized by its board of directors to enter into a contract with the San Antonio Ice Company, which required the former company to commence the delivery of 4000 tons of ice to the latter each year for five successive years on the first day of April, and complete said delivery on October 1st of each year, by which the San Antonio Ice Company was to agree to pay for the ice so delivered during that year, 1899, $5 per ton, for the year 1900, $5 per ton, for 1901, $4.75 per ton, and for 1902 and 1903, $5 per ton, and not to sell ice to the inhabitants of San Antonio during the period of the existence of said contract, which contract thus authorized was executed in writing in March, 1899.

The contracts between the Crystal Ice and Manufacturing Company

and the Southern Ice and Cold Storage Company and the San Antonio Ice Company were of the same nature, and made for the same purpose that the contracts were which had theretofore been made between said companies from the time of the organization of the latter up to 1899. The evidence is sufficient to show that the contract made with the Butchers and Saloon Men's Ice Manufacturing Association was made for the same purpose, and that each of the three companies had unlawfully conspired with each other and with the San Antonio Ice Company for the purpose of restraining trade and stifling competition in the manufacture and sale of their products, and in fixing the prices thereof to the inhabitants of the city of San Antonio, and that all of said contracts were made in furtherance of said unlawful conspiracy; that after said contracts were made, none of the three companies would sell or deliver ice to the inhabitants of San Antonio or Bexar County; that all the ice consumed by the inhabitants of said city had to be purchased directly from the San Antonio Ice Company, there being no other companies or persons engaged in the manufacture and sale of ice to the general public in said city.

*Conclusions of Law.*—While we have fully considered all the questions raised by appellant's assignments of error, we deem it unnecessary to discuss them. They have frequently arisen in this State, and have been fully discussed by the courts of last resort.

The constitutionality of the anti-trust law of Texas has been too often decided to admit of question now. It is too plain for argument that the petition in this case alleges a cause of action against the appellant. The facts proven correspond with the allegations, and leave no room for doubt that appellant has violated the spirit as well as the strict letter of the statute. The judgment rendered is such as, in a case of this character, should follow the palpable violation of the law, and it is in all things affirmed.

*Affirmed.*

Writ of error refused.